## Boggs *against* Lancaster Bank.

To entitle the holder of an accepted draft to recover against the acceptor, who did not receive value, he must be an innocent holder for value and without notice of the facts which would be a good defence as between the drawer and acceptor.

Notice to the cashier of a bank that a draft will not be paid, is sufficient notice to the bank itself.

The holder of a protested bill may sue the acceptor or drawer, or both; but when he has received the amount from either, he can proceed no farther against the other.

ERROR to the District Court of *Lancaster* county.

The Lancaster Bank against John Boggs & Co. This was an action founded upon a protested draft. The facts of the case, and the questions which arose in the court below, are stated in the opinion of the court.

*Stevens*, for plaintiff in error.
*Long*, for defendant in error.

The opinion of the Court was delivered by

HUSTON, J.—This suit was brought by the Lancaster Bank against John Boggs & Co. on two bills of exchange, dated 5th December 1840, drawn by John Stouffer on John Boggs & Co., and by them accepted; one for $700 and the other for $800, payable to the order of John Stouffer at 45 and 60 days, and by him endorsed to the Bank, at whose instance they were protested for non-payment. Stouffer was a miller and distiller in Lancaster county, and sent his produce to John Boggs & Co., who were in the habit of making advancements thereon. On the 3d December 1840, Stouffer wrote to them that on the next day he would forward 19 hogsheads of whiskey, and requested them to accept the two drafts, which they did. There was at that time due to Stouffer about $200. He never sent the whiskey. On the 15th December 1840, Stouffer confessed judgments to several persons to the amount of $18,000. On hearing this, the cashier of the Bank drew a judgment-bond, and sent it to Stouffer to be executed, which he refused to do, and refused a second time, saying the Bank would be paid out of the sale of his property. Stouffer held these

[*Boggs* v. Lancaster Bank.]

two drafts until the 24th December, and said he would not offer them for discount at the Bank, for he owed the Bank and Bachman the cashier, and if he showed them they would be retained.

The directors met for discounting on the 21st December, and not again until the 28th. On, the 20th December, Stouffer owed the Bank $1886.29. The books of the Bank, at first view, show that these drafts had been passed to them on the 21st; but it was clearly proved that they were passed to Bachman in the Bank on the 24th. Samuel Nailer had seen the drafts in Stouffer's possession on the 22d; he had made inquiry by another person of Boggs, who had told him there would not be $200 between them when their accounts were closed; this was on the 28th: he had told Bachman on the 23d that he thought the drafts would be good in the hands of the Bank. On the examination of the book-keeper of the Bank, he proved that no part of the $1886.29 which Stouffer owed the Bank was for notes discounted, nor on any endorsement or acceptance. Of course it was all due on over-drafts. On the 24th December 1840, Stouffer was in Bank, in treaty with Bachman the cashier, and he then agreed to give the drafts to the Bank, and he was to receive $400 more. There was nothing said of his giving any note or security for these $400, but it was then paid to him on his check. There was no entry in the books of the date of the transfer of these drafts to the Bank; but the date of Stouffer's check, which was then given, proved the time. There was no proof that any director knew of the transaction until the next meeting of the board, on the 28th; and no proof of any authority given to Bachman to discount, or of his ever having done so except in this case. In the forenoon of the 28th, and before the directors met, Boggs went to the Bank, and then Bachman told him the Bank had discounted the drafts on the 21st. This was not true. Boggs then gave notice that he did not owe the money, and would not pay it. In the mean time, Stouffer had made an assignment in trust for his creditors, and named the Lancaster Bank, " amount not recollected," in the second class. In August 1842, the report of the auditor on the account of his assignee was confirmed: by it, it appeared that the Lancaster Bank claimed the whole amount of $1886.29 and $400, and received as its dividend $1517.59.

There is no doubt but that the maker of a note or acceptor of a draft is liable to an innocent *bonâ fide* holder, although he made the note or accepted the draft for the accommodation of the payee or drawer; but it may be otherwise where the holder did not receive it in the ordinary course of business and for a valuable consideration, or after notice. The defendants contended that Bachman was personally liable to the Bank for paying over-drafts; that instead of taking these drafts in the ordinary course of business, he paid Stouffer $400 to induce him to give them; for $400 to a man notoriously insolvent, without an endorser or any secu-

[Boggs v. Lancaster Bank.]

rity, can be considered as nothing else. As to the Bank, its directors knew nothing of this until the 28th, after notice; and it does not appear, except by this suit, that they ever recognised or ratified the conduct of Bachman; and if notice was given to them, as it clearly was before they met as a board on the 28th, it was sufficient. Now, if there was notice to the acting officer of the Bank, it was notice to the Bank; he is the Bank's agent for this purpose, though he may not have any power to discount notes. A ratification after an act done may, as to the agent, be the same as a previous authority; but where the act affects one not a party to the transaction, nor cognizant of it, the case is different. If the jury believe that the directors had notice before they gave effect and validity to this act of Bachman, the Bank is not an innocent holder.

I do not understand the Judge where he says, "It is immaterial whether these drafts were discounted on the 21st or 28th, or not at all; by endorsement or delivery they became the property of the plaintiffs on the 24th." It does not mean whether the directors agreed to Bachman's act in giving $400 to a man he knew to be insolvent, whether without a note or with one; nor does he mean whether for value or not, or after notice or not: at least I suppose so: but his expression would lead the jury to think such was the law. It must be left to the jury, if it be not too plain to doubt about, that Boggs came to give notice to the Bank, not to take these bills. The falsehood of Bachman, that the Bank had discounted them on the 21st, left him nothing to do but to say, " they will not be paid;" and if the directors took or sanctioned the taking of them after that, the Bank is not an innocent holder.

I cannot see how the Judge was led into another mistake. The holder of a protested bill may sue the acceptor, or drawer, or both; but when he has recovered the amount from either, he can proceed no farther against the other. Here the Bank had received more than three-fifths of their debt from Stauffer's assignee, and therefore has no colour of claim against the defendants for that amount. As to the Bank recovering for the use of the other creditors, they have no more right to do so than they have a right to receive for my use. If, then, the plaintiffs are to recover, it can only be the balance, deducting what has been received from the drawer; and it may depend upon testimony which may be more full than we have it, whether the $400 given by Bachman is to be taken into the calculation. It appears that the defendant owed Stauffer about $200; he could have recovered that; and it would seem that the plaintiffs are entitled, at all events, to so much.

Judgment reversed, and *venire de novo* awarded.